May it please the Court, my name is Jim Jellison and I represent Mr. Ken Stanley. In April of 2000, having seen a job opening for the assistant coach of the ASU's women's college basketball team, Mr. Stanley, a qualified applicant for that position, submitted his application. Unfortunately for Mr. Stanley and all of the other men who applied for that assistant coach position, the application was never given any serious consideration. Now he had coaching experience in the National Women's League or something, which was different from the desired qualification, assuming it extended to coaching, under the notice. Is that correct? I believe that Mr. Stanley actually had NCAA college basketball experience. There was another applicant who had professional women's basketball experience, and that was a Mr. Lewis, Mr. James Lewis. But Mr. Stanley met the minimum qualifications in terms of the requisite college-level experience. Even considering the notice as including coaching as well as playing experience? Well, obviously Mr. Stanley had the coaching experience. In women's basketball? I believe that Mr. Stanley did have the coaching experience there. Clearly he did not have the playing experience in women's college basketball, and as head coach Charlie Turner Thorne obviously in this case acknowledged, she knew of no man who had ever played college basketball on a women's team. And I think it's beyond dispute in this case, and I think Judge McNamee recognized it as such, that it could be reasonably anticipated that no male applicant would meet the criteria of playing experience in women's basketball at the college level. Yeah, but if the notice included coaching experience, the male could meet the coaching experience, and apparently a bunch of males thought so because there were a lot of applicants. That's absolutely correct. If the stated criteria of having competitive experience in women's college basketball meant both coaching and playing, then there would be many men who would also be qualified for the position. If that were the case, then Turner Thorne had her two picks that she kind of wanted all along, it looks like. And she may have prevailed upon the selection people to include those two among the final eight, and then she chose those two, interviewed, I think both hired one. But what did she have to do with excluding your client? Well, ultimately that competitive experience for basketball wasn't interpreted as competitive experience in terms of both coaching and or playing women's college basketball. It was interpreted as playing women's college basketball, which as a consequence eliminated all men. And I believe that the part of Judge McNamee's order which was correct is that he found that there was a viable fact question here regarding Turner Thorne's involvement, and I still maintain that that is a continuing fact question. When you look at the record in this case, one of the Turner Thorne's employees who was on the screening committee, Carrie Shriver-Decker Green, I believe her name is, indicated quite clearly that the competitive experience was interpreted exclusively as playing experience. Turner Thorne recognized in her deposition that that interpretation of playing experience would naturally exclude all men from consideration for the position. I follow up on Judge Thompson's questions, though. Your problem is what was the injury? It was set up so these two favorites of the coach were going to be chosen. And it didn't make any the face of the thing was non-discriminatory. But it wasn't favoring women or men. It was favoring two people that in fact had been selected in advance. And you might as well be realistic about these things. Colleges often go through these rituals of people have decided who they want in advance. And that is not gender discrimination. That's just favoritism, and that's the way the world works. Your Honor, it so happens that the two women that Turner Thorne claims were preselected, or excuse me, the two applicants, happen to also have been women. And when you combine that ultimate fact with the other. I don't see that that's the right one at all. They were her favorites. That is not gender discrimination if A likes B and B happens to be a woman. Your Honor, I believe that the Ninth Circuit precedent that makes that ultimate issue of who was subject to preselection a true issue in the case is a case that was actually cited by Turner Thorne, and it's the Blue v. Widnall case in 1998. In Blue v. Widnall, the Ninth Circuit concluded, Your Honor, just as you did, that preselection in and of itself doesn't equate to discrimination. However, the Court did conclude that if that preselection was gender-based, then that remains a problem in terms of in that case it was Title VII, but I would argue also equal protection. So what's the evidence that this preselection was gender-based? Well, the evidence would include, and I think primarily, the criteria that you are using playing experience in women's college basketball in order to get yourself to two preselected female candidates. That, quite frankly, and I think. Do we know anything about the qualifications, the two people who were selected in the final? We do. I'm sorry, Your Honor. What do we know about the two that were in the finals? Well, one, and I will be frank with you, I cannot recite her qualifications. The other, who ended up getting hired for the position, actually did not have teaching experience at the Division I NCAA level and actually came off of a community college teaching program, as I recall. So I believe she was actually less qualified than Mr. Stanley was for the position. No, so the ritual was a sham, but does that gender discrimination? Well, that's the fact question, Your Honor. If a reasonable fact finder concludes that it was a sham, but that it wasn't based on an intent to discriminate on a gender basis, then Turner Thorne can walk away. But if a fact finder reasonably concludes, and on these facts, a fact finder can reasonably conclude that a gender discrimination or the intent to discriminate based on gender was a factor, then Mr. Stanley can prevail. May I ask you a different question, and that is, obviously, if it wasn't a playing criterion, you're not going to have any males in the pool, but you also may not have any females. And, in fact, there were a whole lot of females who were excluded. So how does that play out? I do agree that some females were excluded. It couldn't be all. Sure. I mean, going in, if you say what I want is somebody who has had actual real-world experience playing this game and the women's game is different from the men's game, and that's what I want, is somebody who's actually played the game. Now, it could exclude all females. You know it will exclude all males. So why does that permit a reasonable inference that the purpose was to discriminate against men? Because it may be you get no female applicants to qualify. Well, I think that Turner Thorne could anticipate that she would get female applicants that played. And, in fact, I believe that she did. But Turner Thorne acknowledged that no man, not a single man. That's a given. No man can do it. But it's also possible that no women can meet it. I suppose if that happened, Turner Thorne would have to expand her criteria. But she wasn't placed in that particular. But, I mean, the point is, is it really gender discrimination under Feeney when a large number of the gender apparently being biased in favor of is excluded also? I believe that it is gender discrimination, because unlike Feeney, the criteria was a specifically gender-based criteria. It would be like saying to a female applicant to a police department that you had to be in the Boy Scouts. In this day and age, we know that that would violate equal protection. Men and women both had the right to compete for this position, and men were denied that right. And I am going to be out of time, and I see that. Save it. Save what you have. I'll save my ten seconds. Thank you. Okay. Mr. Goodwin. Thank you. May it please the Court, I'm Michael Goodwin. I represent Charlie Turner Thorne, who is being sued under Section 1983 for an alleged violation of the Equal Protection Clause. What I'd like to do first is to address the constitutionality of her conduct and then talk about the reasonableness as part of the qualified immunity inquiry, which was the basis for the district court's summary judgment in her favor. As you know, this lawsuit arises out of a selection process, the hiring of an assistant basketball coach at ASU. Charlie Turner Thorne did participate in that search. She participated at the beginning of it and at the end of it. She wasn't involved in the middle of it, which is where the screening of the applications took place and which is where the overwhelming majority, 98 percent or so, of the applicants. Well, yes, but she said, and everybody else seemed to say, that it was clear that the criteria was experience playing, not experience coaching. That's right. The – in a way, it's ironic that the focus of this whole appeal is on this one desired qualification of competitive experience in Division I-A women's basketball, which no matter how you interpret it, this kind of goes to the question that Judge Thompson asked, no matter how you interpret it, and it is susceptible of different interpretations, Mr. Stanley, the plaintiff in this case, did not have that competitive experience. His – he obviously hadn't played, so if you interpret it just as playing the way it actually ended up being interpreted, obviously he doesn't apply. But if you interpret it as coaching, he didn't have it either. So if that's going to be a factor, unless you're going to throw out and say that you can't consider that at all, if that's going to be a factor, Mr. Stanley didn't have that. But Charlie Turner Thorne did – she's the one who was involved in drawing up the qualifications, and she would ask at deposition about it. And remember, it's a desired qualification. There's two types of qualifications. Minimum qualifications, you've got to have them. You don't have them, you're out of the pool. And desired qualifications ordinarily don't mean that. They're ordinarily factors to be considered. And at her deposition, when Charlie Turner Thorne was asked about that, she said – what does it mean? This is page 82 of her deposition. It's in the supplemental excerpts of records. That means that they played Division I college basketball. That's a good thing, and it might get looked at. There's no evidence in the record, the excerpts of records, supplemental excerpts, there's no evidence that she said let's eliminate all the males. It was a factor that would be taken into account. But what I would like to do is look at the – look at it on its face. On its face, it could be interpreted, and this is the way the HR liaison in the athletic department looked at it, as a – as meaning playing or coaching. And that would give males and female candidates a chance to advance. There were more than 100 applicants. More applicants were male than female. And on its face, it did not – it did not discriminate against male. That's why we say it's a non – or it is a neutral – it is a neutral classification. It's not a classification at all. Now, what happened, as we know, that it was applied differently. It was applied to say, well, it only means playing experience. And so at this second stage of the search process that was done by others, the people who lacked – the candidates who lacked playing experience were eliminated. That included a number of males. It included a number of females. It included all the males. It included all the males who were still in the pool. Most of the people had already been eliminated at that stage. Well, about half, a little bit more than half. And what – what the testimony on that, Carrie Green or Carrie – Carrie Shiverdecker, is her name now. Carrie Shiverdecker testified. She said, look, Charlie had favorites. We knew who those favorites were. We were trying to narrow the pool. So as a practical matter, what ended up happening, there was no evidence that Charlie Turnathorn instructed them. It looks as if – Judge McNamee did a great job of cutting to the chase on this. What was going on here, as Judge Noonan also has recognized here, that they were trying to narrow the pool down to a manageable number that included Charlie Turnathorn's favorites. And Charlie Turnathorn also testified that she typically hired people that she knew. So in response to your question, you know, what do we know about these other candidates, the candidates that were her favorites were ones that she knew, that she had worked with, and that she was comfortable working with. So the – so what Turnathorn did then was to formulate a number of criteria, one of which she thought was a factor that would be – that it was okay to consider playing experience. That's what she did. That's what the Affirmative Action Office at ASU – it's an excessively bureaucratic process, the way that hiring procedures are done at ASU. The Affirmative Action Office at several different stages looked at what was being done. And they do an independent audit of the search at two or three different stages during the process. And at every phase, they said, this is okay. Go forward with your search. Make – interview the candidates. Make a – you know, make an offer. So the ultimate basis of the district court's decision was on – was that – was on qualified immunity. Judge McNamee correctly concluded that Charlie Turnathorn could have reasonably believed that it was proper to proceed, that it was proper to hire – to make a hire in this situation that was not Mr. Stanley or one of the other candidates, that based upon the fact that the – there was no substantial disparity in the numbers of males and females who were eliminated by the challenged criterion, and also based upon the fact that the Affirmative Action Office had looked at this. Now, granted, that's not any kind of absolute defense. But when the people who work for the university who take a look at it and who are expected to stop a process if there's some flaw in it say, no, it's okay, then a person in her position could have reasonably believed it was okay to go ahead and complete the selection process. And Judge McNamee also concluded that in the final analysis, there's no evidence of purposeful discrimination. This is an equal protection claim. It's against Charlie Turnathorn individually. And there's – in the final analysis, there's an absence of evidence that she purposely wanted to exclude men. She excluded men and women, all except for the favorites that she had going into the search. And for that reason, we think the decision of the district court was correct, and I would ask that you affirm it. Okay. Thank you, Mr. Goodwin. Mr. Charlson. An excerpt of Record 50, Shriver-Decker says that we eliminated anybody who didn't play women's ball. For that reason, this Court's decision in the Lindsay case, a 1994 decision, is the case that controls and not Feeney, which is distinguishable. Now, Stanley didn't even have the coaching qualifications. Is that right? I dispute that. I disagree with Mr. Goodwin. And, in fact, Judge McNamee did not come to that conclusion either. In fact, I don't even think that's an issue on the appeal. Had he coached him in his 1A?  Yes, I believe that he had coached at that level. Is that in the record? I believe that that's in the record. It was in front of Judge McNamee. Judge McNamee didn't – You can find it if we search. Okay. I would hope so. I know that in Judge McNamee's order, which is attached, that was not an issue. Mr. Stanley's coaching experience did not factor in to the qualified immunity decision in this case. Thank you. Thank you, counsel. Both of you. The matter just argued will be submitted. We'll next hear argument in – Gacciola.
judges: Noonan, Thompson, Rymer